### STATE v SCHROER

Ohio Common Pleas, Hamilton Co

Decided June 7, 1938

# 578

Dudley M. Outcalt, Prosecuting Attorney, Cincinnati, and Simon Leis, Asst. Prosecuting Attorney, Cincinnati, for state.

Frank K. Bowman, Cincinnati, for defendant.

## OPINION

By MACK, J.

Defenoant was indicted by the grand jury for violating §486-23 GC, it being alleged that on April 27, 1938, he

"Did orally solicit and was concerned in soliciting one Lonnie Stoneking for an assessment or contribution for a political party, he, the said ·Lonnie Stoneking, being an employee or subordinate of the state of Ohio, Department of Liquor Control, in the classified service of the state of Ohio, etc."

A jury being waived, the state introduced its testimony and rested. Thereupon, defendant moved the court for an acquittal. After argument the matter was taken under submission by the court and defendant's counsel has filed a brief in support of his contention. Mainly, the argument and brief for defendant rests upon the ground that inasmuch as Lonnie Stoneking's appointment was a "provisional appointment" he was not within the classified service. Let us consider this contention.

By amendment to the **Constitution of Ohio, Article 16, §10**, was adopted September 3, 1912, reading as follows:

"Appointments and promotions in the civil service of the state, the several counties, and cities, shall be made according to merit and fitness, to be ascertained, as far as practicable by competitive examination. Laws shall be passed providing for the enforcement of this provision."

Accordingly §§486-1 to 486-31 GC, were passed by the Legislature.

Concisely stated, by §486-8 GC, the civil service of the state, counties, cities, etc., is divided into the unclassified service and the classified service. Specific mention was made of all those not in the classified ser-

vice, and exempt from all examinations. All other positions not so specifically named are in the classified service.

Lonnie Stoneking, it is undisputed, was a clerk in a Cincinnati store of the Department of Liquor Control, provisionally appointed April 18, 1936, and such position clearly by the provisions of said section of the code was in the classified service.

It is provided that appointment to such office generally speaking shall be from the eligible list submitted by the Civil Service Commission of the state upon examination for the position.

By **§486-14 GC** it is expressly provided as follows:

"Whenever there are urgent reasons for filling a vacancy in any position in the classified service. and the commission is unable to certify to the appointing officer, upon requisition by the latter, a list of persons eligible for appointment after a competitive examination, the appointing officer may nominate a person to the commission for non-competitive examination, and if such nominee shall be certified by the commission as qualified after such non-competitive examination, **he may be appointed provisionally to fill such vacancy until a selection and appointment can be made after competitive examination; but such provisional appointment shall continue in force only until regular appointment can be made from eligible lists prepared by the commission and such eligible list shall be prepared within ninety days thereafter.**"

There is also a provision for an emergency appointment "In no case to continue longer than thirty days, and in no case shall successive appointments be made."

By **§486-23 GC**, it is provided:

"No officer, employee, or subordinate in the classified service of the state, the several counties, cities, and school districts thereof shall directly or indirectly, orally, or by letter, solicit or receive, or be in any manner concerned in soliciting or receiving any assessment, subscription, or contribution for any political party or for any candidate for public office; nor shall any person solicit, **directly or indirectly, orally, or by letter, or be in any manner concerned in soliciting any such assessment, contribution, or payment from any officer, employe, or subordinate in the classified service of the state.**"

By §486-28 GC, it is provided:

"Whoever * * * **wilfully** refuses or neglects otherwise to comply with or conform to the provisions of this act, or **willfully** violates any of such provisions, shall be deemed guilty of a misdemeanor and upon conviction thereof shall be punished by a fine of not less than fifty dollars nor more than five hundred dollars, or by imprisonment in the county jail for a term not to exceed six months, or by both such fine and imprisonment, in the discretion of the court. If any person so convicted shall hold any public office or place of public employment such office or position shall by virtue of such conviction be rendered vacant."

Upon the claim that Stoneking, being such provisional appointee, and although appointed for not to exceed ninety days, effective April 16, 1936, and holding such office on the 27th day of April, 1938, the day of commission o such alleged misdemeanor, on account of no examination having been held by the civil service commission and no eligible list having been certified to the department of liquor control, was not within the classified service, numerous authorities outside of this state have been cited for defendant, the only Ohio case cited being that of **Hess v Canton, 47 Oh Ap 108.** That case, however, was one of an **emergency** appointment, which, by the express language of §486-14 GC, was "in no case to continue longer than thirty days."

As stated in the opinion of the court at page 112:
"This is not a mere matter of temporarily filling a vacancy, but an emergency."

On page 113 the court said:
"We would again repeat that the present situation is not a matter of vacancy. The first paragraph of §486-14 GC, has to do with urgent reasons for filling a vacancy in the classified service. It provides for the provisional appointments which shall continue for a period of ninety days. Further on in this section a different contingency is contemplated. The statute reads: 'In case of an emergency an appointment may be made without regard to the rules of this act, but in no case to continue longer than thirty days * * *'."

If, however, we need the advice of Confucius "to walk in the trodden paths" we find that the contention that Stoneking was not in the classified service has been necessarily and decisively decided adversely in several decisions of the courts of this state binding upon us.

As early as 1914 in the case of **State ex rel Fitzgerald v Keefer et al, 16 Nisi Prius, (N.S.) 145,** a like contention was made with reference to a position in the classified service of Cincinnati where a valve man in the Water Works Department was appointed by the mayor temporarily until an eligible list was created by the civil service commission as the result of a competitive examination. In the elaborate opinion of Judge Merrell, then judge of the Superior Court of Cincinnati, and afterwards of the Supreme Court of Ohio, it is demonstrated that such appointment continues and the party appointed is in the civil service until he is succeeded by an appointee from the eligible list prepared by the civil service commission. At page 157 Judge Merrell quotes the language:

"**Such provisional appointment shall continue in force only until a regular appointment can be made from eligible lists prepared by the commission,** and such eligible lists shall be prepared within ninety days thereafter."

He points out:
"It is obvious that the language emphasized fixes the duration of a temporary appointment, and that the concluding phrase of the statute just quoted is mandatory or at least directory, only to the civil service commission."

Upon the argument Judge Merrell was referred to a contrary conclusion reached in our Common Pleas Court in State ex rel. Mugavan v Civil Service of Cincinnati, 12 O. L. R. 204, but declined to follow it.

Upon error proceedings the Court of Appeals of this county affirmed the Keefer case on the opinion of Judge Merrell (3 Oh Ap 413) and reversed the Mugavan case on the authority of the **Keefer case, (3 Oh Ap 440).**

In **Schroeder v State ex rel Thomas, 32 Oh Ap 105, (7 Abs 422),** it was likewise held in 1929 by the Court of Appeals for Lucas county that temporary appointees held their office until an eligible list is established and that they could not be summarily discharged notwithstanding such was the custom.

In that case it was pointed out that

some of such employes had held their positions under such temporary appointments for periods ranging from one and one-half to twelve years, there not having been any eligible lists submitted from which appointments could be made of successors after competitive examination. As stated by the court at page 110:

"Customary violation of an express, lawful charter or statutory provision can not make such violation lawful."

Recently our Court of Appeals, in 1937, had before it the case of Court House janitors who were provisionally appointed and after ninety days were discharged (State ex rel Edwards v Campbell, et al, 56 Oh Ap 357, (25 Abs 4), 9 O. O. 411.) It was held in that case that such janitors being within civil service and afforded the protection of civil service statutes had the right to appeal to the civil service commission and that failing to pursue such express statutory right they could not be granted a writ of mandamus to reinstate them. From the papers in that case it appears that while some of the janitors were appointed on October 14, 1936, and discharged January 20, 1937, at least one of them had been appointed on April 1, 1935, and was not discharged until January 31, 1937.

Upon the foregoing binding authorities we conclude that Stoneking was, on the 27th day of April, 1938, in the ▮▮▮▮ ▮ classified civil service of the state of Ohio.

It should be noted that in other states where a genuine undisguised civil service law has been enacted and is rigidly enforced the provisions for provisional or temporary appointments are by the statutes of such states expressly limited to continue a definite time, and no longer, just as is the case with our Ohio provisions only as an emergency appointment "In no case to continue longer than thirty days."

It would seem from the cases that have been before our courts that it can be said with reference to provisional appointments, paraphrasing the language of a recent writer, "Apparently harmless phrases carry latent permissive dynamite."

In other words, the record in instant case shows that no civil service examination for the position of clerk in liquor stores in Cincinnati was held since February 15, 1934, and yet numerous appointments have been made and appointees continued in service. It is unnecessary to comment on this subject except to say that the failure of the civil service commission to hold such examinations is a matter of public concern and not within the power of this court to order or direct. It would seem that there ought to be an awakening of public interest seeking action by the Civil Service Commission, so that worthy persons desiring to enter in a competitive examination for a position of clerk in the liquor stores carrying a salary of from $1,500 to $1,800 a year could be afforded the desired opportunity.

It is argued that the state has failed to prove willful intent to violate the statute.

Before considering the evidence it is well to consider the essential elements of this misdemeanor and what must be proved to establish guilt.

In State v Channer, 115 Oh St 360, at 357, the court said:

"This is a government by law. If a wrong may be done for which there is no adequate punishment, the fault is of the Legislature and not of the courts. This court will not usurp the power of the Legislature in that respect; nor will it depart from the universal rule of stict construction of criminal statutes, because, perchance, it has before it parties who, upon the record, seem to merit punishment."

In State v Myers, 56 Oh St 342, it was held:

"A statute defining a crime or offense cannot be extended, by construction, to persons or things not within its descriptive terms, though they appear to be within the reason and spirit of the statute."

In State v Finley, 15 O N P (N.S.) 499, it was held that an indictment, charging defendant with "willfully" violating the statute in question, need not aver knowledge that persons solicited were in the classified service.

Our own Common Pleas Court in 1933 had before it the case of State of Ohio v William Burk, No. 38571 on the docket of this court. The indictment in that case charged that Burk, a parole officer of the state of Ohio, an employe in its classified service, did directly take an active part in politics, other than to vote as he pleased and express his political opinions, by acting as a witness and challenger on behalf of the Democratic Party in Ward 7, Precinct B, Hamilton county, at the general election November 8, 1932.

Judge Matthews (now of our Court of Appeals) held in that case that in order to constitute the crime two elements must concur, viz., the act and the specific intent characterized as "willful." He sustained in that case a demurrer to the indictment for failure to allege that the act was done "willfully" and refused to permit an amendment of the indictment.

In the instant case whether the indictment contains the allegation that the act was done "willfully" or not, the conclusion of the court on the evidence introduced by the state is that there has been a failure to prove beyond a reasonable doubt that the act of defendant was done "willfully."

Inasmuch as under §486-28 GC conviction results in forfeiture of office or position of defendant proof of all essentials should be convincing. See **State ex rel v Viner, 119 Oh St 303.**

As far as proof has been introduced by the state it tends to establish the following: Defendant was in charge of the Cincinnati office. He and Stoneking and other clerks in the Cincinnati store who were called as witnesses knew from what appeared in the press that it was sought to "assess" state employes for campaign purposes. It is true that the employes testified their contributions were voluntary, but in view of the stated amount and the times of payment of the known assessment, it can hardly be said that the payments were voluntary contributions. The proof tends to show that defendant was "concerned" in the solicitation of such payments. However, the proof tends to show that defendant, in ignorance of the law, believed that Stoneking was not in the classified service, and that he understood the assessment was to be "from the non-civil service employes that worked in the liquor stores"; "from the non-civil service employes only."

While ignorance of the law is no excuse, nevertheless, when the act of a person in question must be done "willfully," that is to say, with "evil purpose contrary to known duty," belief that the acts in question were lawful presents a situation where one cannot say beyond a reasonable doubt that such acts were done "willfully."

Beneficient are the purposes of the law in freeing civil service employes from contributions solicited by political parties. Imperative is the duty of courts to enforce such law. Nevertheless the law invests one

accused of an offense against such law with the same protection afforded every accused viz: not to be convicted except upon proof of all the essentials constituting the offense.

From the foregoing it follows ██ that a finding of not guilty will be entered herein.

It is scarcely necessary to add, that with the emphatic declaration that **provisional employes are in the classified civil service,** any solicitation of political contributions from them, or being concerned in any such solicitations, should be held to be "willful" violations of the civil service law, and upon proper indictment and proof will constitute a misdemeanor.